**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF INDIANA, SOUTH BEND DIVISION**

| | | |
|---|---|---|
| HAHKEEM JAMAL LAYMAN,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF ELKHART, MATTHEW SCHWARTZ, DUSTIN YOUNG, in their individual capacities,<br><br>Defendants. | ) | HON. CRISTAL C. BRISCO<br><br>HON. MAG. MICHAEL G. GOTSCH, SR.<br><br>CASE NO. 24-CV-602<br><br>**JURY TRIAL DEMANDED** |

**AMENDED COMPLAINT**

Plaintiff, HAHKEEM LAYMAN, by his undersigned attorneys, complain of Defendants, CITY OF ELKHART, MATTHEW SCHWARTZ and DUSTIN YOUNG, in their individual capacities, as follows:

**Introduction**

1. An epidemic exists in Elkhart, where wrongful prosecutions are a predictable product of a broken judicial system that is plagued with police, prosecutorial, and judicial misconduct.

2. Plaintiff's, Hahkeem Jamal Layman, tragedy hinges on police misconduct.

3. For decades, white Elkhart police officers have violated the constitutional rights of Black Elkhart citizens.

4. Tragically, these unjust prosecutions often take years to unravel, leaving innocent men and women to languish incarcerated for crimes they did not commit.

5. Six individuals have been exonerated from Elkhart thus far, a sobering statistic for a city of approximately fifty-two thousand people.

6. Mr. Layman is fortunate to not have been wrongfully convicted.

7. Instead, due to intentional, racially motivated police misconduct, Mr. Layman was wrongfully prosecuted for years of his life.

8. True to form, Mr. Layman is a Black Elkhart citizen.

9. And of course, at the time of the underlying misconduct, Defendants Matthew Schwartz and Sgt. Dustin Young were white Elkhart police officers.

10. On August 18, 2020, Mr. Layman was acting lawfully as he arrived home after a long day at work.

11. On that date, Defendant Schwartz committed egregious misconduct against Mr. Layman.

12. After racially profiling Mr. Layman, Defendant Schwartz conducted an unlawful search in violation of Mr. Layman's constitutional rights.

13. Defendant Schwartz then proceeded to violently assault Mr. Layman without legal justification.

14. To cover up his misconduct, Defendant Schwartz then fabricated evidence to manufacture false charges against Mr. Layman for resisting law-enforcement.

15. To complete this cover-up, Defendant Schwartz knowingly fabricated the version of events contained in his probable cause affidavit. At the time, Defendant Schwartz understood that there was no probable cause to initiate charges against Mr. Layman.

16. On August 18, 2020, Defendant Sgt. Dustin Young joined the conspiracy to frame Mr. Layman. At the time he joined the conspiracy, Defendant Young had already been implicated in misconduct that impacted his ability to testify in a criminal proceeding.

17. By engaging in this misconduct, Defendants intentionally sought to frame Mr. Layman for crimes he did not commit.

18. Defendants' egregious misconduct caused Mr. Layman to be incarcerated at the Elkhart County Jail for more than a month of his life, tearing him away from his family and employment.

19. Defendants' unlawful criminal prosecution of Mr. Layman continued for years until the State finally dismissed charges with prejudice in February 2023.

20. By then, Defendant Schwartz was found by the trial court to have testified falsely regarding the series of events that led to Mr. Layman's prosecution.

21. The extensive misconduct described above and below did not occur in isolation.

22. Elkhart police officers engaged in systemic misconduct for decades prior to Mr. Layman being framed for a crime he did not commit.

23. Former Elkhart Mayor Jim Perron and three former Chiefs of Police describe a culture of misconduct within the Elkhart Police Department dating back to the 1980s. As each former policymaker reveals, the misconduct was enabled by a code of silence among Elkhart officers and resulted in the widespread violation of citizens' constitutional rights.

24. While the wheels of justice turn slowly, the truth eventually surfaced in this case.

25. Through this lawsuit, Mr. Layman seeks accountability for the flagrant misconduct that led to years of suffering.

26. He likewise seeks to make sure that this type of misconduct does not harm other citizens.

**Jurisdiction**

27. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution and Title VII of the Civil Rights Act.

28. This Court has jurisdiction of Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and § 1343.

29. Venue is proper under 28 U.S.C. § 1391(b). Defendants reside in this district and the events and omissions giving rise to Plaintiff's claims occurred in this district.

**Parties**

30. Plaintiff is a 29-year-old resident of Elkhart, Indiana.

31. At all relevant times, Defendant Matthew Schwartz was a police officer in the Elkhart Police Department. He is sued in his individual capacity and acted under color of law and within the scope of his employment during the investigation at issue.

32. At all relevant times, Defendant Dustin Young was a police officer and Sergeant in the Elkhart Police Department. He is sued in his individual capacity and acted under color of law and within the scope of his employment during the investigation at issue.

**Factual Backdrop**

33. On August 18, 2020, Mr. Layman arrived home to his family after a long day at work.

34. That same day, Defendant Matthew Schwartz committed egregious misconduct against Mr. Layman.

35. First, Defendant Schwartz racially profiled Mr. Layman, who was acting lawfully when he came home from work.

36. After engaging in racial profiling, Defendant Schwartz violated Mr. Layman's constitutional rights by conducting an unlawful search.

37. Defendant Schwartz then violently assaulted Mr. Layman without any legal justification.

38. Defendant Schwartz's misconduct is part of a pattern of systemic misconduct in Elkhart by white officers against citizens of color.

39. To cover up his misconduct, Defendant Schwartz initiated false charges against Mr. Layman for resisting law-enforcement.

40. In doing so, Defendant Schwartz knowingly fabricated the version of events contained in his probable cause affidavit.

41. On August 18, 2020, Defendant Schwartz created and signed a probable cause affidavit under oath and penalty of perjury.

42. At the time he did so, Defendant Schwartz understood that there was no probable cause to initiate charges against Mr. Layman.

43. Further, Defendant Schwartz knew that assertions he made in the probable cause affidavit were false and fabricated.

44. Even still, Defendant Schwartz completed the probable cause affidavit knowing that it would set in motion and unlawful criminal prosecution against Mr. Layman.

45. On August 18, 2020, Defendant Sgt. Dustin Young joined the conspiracy to frame Mr. Layman.

46. Defendant Young joined the conspiracy to violate Mr. Layman's constitutional rights by signing Defendant Schwartz's false search warrant affidavit knowing that statements made were not true.

47. By engaging in this misconduct, Defendants intentionally sought to frame Mr. Layman, a Black man, for crimes he did not commit.

48. For more than a month of his life, Mr. Layman was incarcerated at the Elkhart County Jail.

49. Defendants' misconduct ripped Mr. Layman away from his family, his employment, and the free world.

50. Even after obtaining bond, Mr. Layman was subjected to stringent conditions for more than two years.

51. Defendants' misconduct and the series of events that ensued derailed and nearly destroyed Mr. Layman's life.

52. Being wrongfully charged with a crime he did not commit had a devasting impact on Mr. Layman, his employment, his mental well-being, and his family.

53. To this day, Mr. Layman suffers the effects of Defendants' misconduct.

54. The only evidence supporting charges against Mr. Layman was fabricated and the result of egregious misconduct.

**For Years, Mr. Layman is Prosecuted for Crimes He Did Not Commit**

55. Based on the fabricated evidence recounted above, Mr. Layman was charged with resisting law-enforcement on August 19, 2020.

56. The only evidence supporting the charges was fabricated and false and manufactured by Defendants to cover up their own rogue behavior.

57. Defendants knew that there was no probable cause for the charges.

58. Defendants' conspiracy to frame Mr. Layman was, in part, racially motivated.

59. Defendants targeted Mr. Layman because he is a Black male.

60. Defendants are white male officers.

**Defendant Schwartz Is An Adjudicated Liar**

61. Mr. Layman filed a motion to suppress during the underlying criminal prosecution.

62. That motion to suppress prompted a pretrial hearing to take place on November 23, 2022.

63. Defendant Schwartz testified at the hearing.

64. A court assessed Defendant Schwartz's testimony and demeanor during the hearing.

65. On December 21, 2022, the court found Defendant Schwartz's testimony that "he smelle[d] marijuana as he is driving by" to "be less than credible."

66. In short, the court determined that Defendant Schwartz lied.

67. At that hearing, Defendant Schwartz also testified that he automatically did a pat down whenever he stopped someone.

68. On December 21, 2022, the court found that Defendant Schwartz's actions "does not comport with the legal standard."

69. Ultimately, the court found that "everything is a product of the initial detention, which is something that came about after the officer called the Defendant back to the vehicle without probable cause to do so, in the Court's estimation."

70. With these findings, the court granted Mr. Layman's motion to dismiss due to the violation of his constitutional rights.

**Mr. Layman's Exoneration**

71. The charges were dismissed with prejudice on February 22, 2023, ending the wrongful prosecution against Mr. Layman.

72. Mr. Layman stands before this Court as an innocent man.

**Defendant City of Elkhart Has a Pattern and Practice of Systemic Police Misconduct**

73. Defendant City of Elkhart has a longstanding pattern and practice of police misconduct.

74. Dating back to 1993, the Board of Public Safety issued a report "Regarding [the] Investigation of Police Officers Found Liable by a U.S. District Court of Using Excessive Force." The Board of Public Safety's 1993 report found that some of the officers used "brutality," and more importantly, that the Department failed to implement proper discipline of officers who commit misconduct.

75. The Board not only expressed frustration regarding efforts to hamper the City Administration's investigation attempts, but it likewise set forth the Report's goal: "to eradicate brutality as practiced by some of our police officers." The Board linked this misconduct to the Elkhart Police Department failing to properly implement progressive discipline of officers. The Board reasoned that, "[a]ctually if progressive, corrective discipline had been practiced in the cases of Hill and Ambrose[,] either they would be cops today who know how to follow proper procedure or they would not be working here. We tend to believe that failure to point out weakness early in the officers career does no one a favor…"

76. The Board of Public Safety reiterated that "[t]he problem appears to be in a system that is secured in privacy and protected by a code of silence further protected by state law…"

77. The Board recommended that "the Department must find a way to better conduct

internal investigations."

78. By 2023, these reforms were still not implemented, thus allowing Defendants to continue committing misconduct without fear of any meaningful discipline or consequences.

79. Defendant City's failure to implement and follow proper policies and procedures enabled Defendants to violate Mr. Layman's constitutional rights.

80. To this day, systemic misconduct and a code of silence exist at the Elkhart Police Department.

81. This custom, pattern, and practice of police misconduct contributed to the wrongful convictions of Keith Cooper, Christopher Parish, Mack Sims, Lana Canen, DeWayne Dunn, and Andrew Royer.

82. It likewise contributed to scores of other wrongfully convicted individuals who remain incarcerated to this day.

**The Systemic Police Misconduct at the Elkhart Police Department Enabled a Group of Officers to Create a Gang Referred to as "the Wolverines," Who Were Known to Prey on People of Color**

83. The Elkhart Police Department remains one of the most corrupt law-enforcement agencies in America.

84. It has been this way for decades on end.

85. For instance, by the early 1990s, the culture of misconduct within the Elkhart Police Department was so rampant that a number of white officers formed a group called the "Wolverines."

86. This group was well-known to others within the Elkhart Police Department, including the Chief of Police: J.J. Ivory. According to Mr. Ivory, the Wolverines were a "group of officers, mostly FOP [Fraternal Order of Police] members -- or possibly all of them were members of the FOP during that time frame, -- and they were of the consensus, of a belief of

'One for all and all for one' as far as their dealings with citizens of Elkhart, especially the people in the south-central side of Elkhart."

87. As former Chief Ivory understood, this meant that Wolverines "would all stick together and regardless on whatever the issue might be, and that whatever it took, more or less, made me feel they would lie, cheat, defraud, or whatever it took to uphold their cause." The Wolverines likewise followed their own code of silence.

88. Members of the Wolverines included "officers who were alleged to be racist and belonging to possibly subversive groups," like the Ku Klux Klan.

89. Mr. Ivory discovered the Ku Klux Klan involvement as he heard "people just idly chitchatting, making comments, saying that we had officers who were card-carrying members of the [KKK at the] Elkhart Police Department…" Confirming their prejudices, Mr. Ivory heard members of the Wolverines use racial slurs:

> I heard some of the members use the "N" word when they didn't know I was around. I walked around a corner, I could walk in on conversations periodically and -- excuse me -- and I heard, I believe it was Mr. Ambrose use the "N" word one time as far as dealing with a citizen in south central Elkhart. And, of course, as soon as they saw me when I walked around the corner, the conversation ceased.

90. The Wolverines espoused racist beliefs and targeted people of color. The Wolverines had a reputation within the Department for being "very proactive officers as far as their work within the south-central area." Given their penchant for misconduct, Mr. Ivory came to question the legitimacy of any investigation conducted by members of the Wolverines.

91. Defendant City never conducted any investigation into the Wolverines.

92. The former Internal Affairs ("IA") Lt. Paul Converse reveals that he believed a "cop gang" existed within the Elkhart Police Department.

93. As Mr. Converse revealed, even though he was on notice of a "cop gang" and the Wolverines, he never conducted a formal nor informal investigation into either.

94. Even though the Chiefs of Police were on notice of the existence of the Wolverines, a "cop gang," none requested that a formal nor informal investigation be conducted. So, nothing was done.

95. That failure directly led to Mr. Layman's constitutional rights being violated.

96. Defendant City's current Assistant Chief of Police, Todd Thayer, was a member of the Wolverines.

97. Defendant City's continued employment of Mr. Thayer, and promotion of Mr. Thayer to Assistant Chief of Police, is evidence of the widespread culture of misconduct that infects the Elkhart Police Department.

98. Defendants' retaliation against Mr. Layman is part and parcel to this widespread systemic pattern of police misconduct that infects the Elkhart Police Department.

**A Federal Jury Has Already Determined that Defendant City of Elkhart Violated Christopher Parish's Constitutional Rights**

99. A federal jury has already determined that Defendant City's failures led to the violation of a citizen's constitutional rights.

100. On September 24, 2007, Christopher Parish filed a federal civil-rights action arising from his wrongful conviction against Elkhart Police Officer Defendants Rezutko, Ambrose, Cutler, and the City of Elkhart. *See Parish v. City of Elkhart, et al.,* Case No. 07-cv-452 at Dkt. No. 1.

101. In that suit, Mr. Parish alleged that various defendants, including Defendant City of Elkhart, violated his constitutional right to a fair trial and due process of law by fabricating

evidence, coercing witnesses, conducting photo-arrays that were improper and unduly suggestive, and withholding exculpatory evidence.

102. Mr. Parish alleged that the defendant officers engaged in such misconduct pursuant to the policies, practices and customs wrongfully maintained by the Defendant City of Elkhart.

103. Mr. Parish was ultimately afforded a trial on his claims against Defendants City of Elkhart and Stephen Rezutko.

104. Mr. Parish presented three *Monell* theories before a jury in his federal civil trial: 1) that the policy maker, Chief Bechtel, turned a blind eye to misconduct and did nothing about it, thus allowing Defendant Rezutko to violate Mr. Parish's constitutional rights; (2) that the City of Elkhart failed to train its employees, thus allowing an untrained Defendant Rezutko to violate Mr. Parish's constitutional rights; and (3) that the City of Elkhart had a custom and practice of withholding exculpatory information, thus causing the violation of Mr. Parish's constitutional rights.

105. On October 27, 2010, a jury found in favor of Mr. Parish and against Defendant Rezutko. On Mr. Parish's policy and practice claim against Defendant City of Elkhart, the jury once again found in favor of Mr. Parish.

106. The Seventh Circuit Court of Appeals affirmed the jury's liability determinations against Defendants Rezutko and the City of Elkhart on December 20, 2012. *See Parish v. City of Elkhart*, 702 F.3d 997 (7th Cir. 2012).

**The City of Elkhart Failed to Provide Sufficient Training and Supervision and Has Exhibited Deliberate Indifference**

107. The constitutional injuries Mr. Layman suffered were caused by the policies and practices of the Elkhart Police Department.

108. Indeed, within the Elkhart Police Department, there was a policy and practice of taking shortcuts to close criminal investigations, including fabricating statements, coercing witnesses and/or suspects during interrogations, and withholding exculpatory and impeachment evidence.

109. Policymakers and supervisory personnel were aware of and failed to curb the improper investigative practices that led to the numerous *Brady* violations.

110. The problems that Defendants engaged in were common knowledge at the Elkhart Police Department. This includes the Department's most senior leadership.

111. This policy and practice repeated itself in numerous criminal investigations at the Elkhart Police Department.

112. Nonetheless, and despite notice to (and often involvement of) policymakers in the above-described unconstitutional policies and practices, there was no effort to rectify any such misconduct. Defendants were permitted to act with impunity in criminal investigations.

113. The City of Elkhart and officials within the Department failed to act to remedy the abuses described in the preceding paragraphs, despite actual knowledge of the pattern of misconduct.

114. They thereby perpetuated the unlawful practices and ensured that no action would be taken (independent of the judicial process) to remedy Mr. Layman's ongoing injuries in this case.

115. The policies and practices described in the foregoing paragraphs were consciously approved by City of Elkhart policymakers who were deliberately indifferent to the violations of constitutional rights described herein.

116. Those policies and practices were the proximate cause of the constitutional injuries that Mr. Layman sustained, as described more fully above.

117. Moreover, the City's failure to train its officers effectively condones, ratifies, and sanctions the kind of misconduct that the Defendant Officers committed against Mr. Layman in this case.

118. Constitutional violations such as occurred in this case are encouraged and facilitated as a result of the City's practices and *de facto* policies, as alleged above.

**Mr. Layman's Damages**

119. Mr. Layman was charged with resisting law-enforcement on August 18, 2020.

120. His life has never been the same since.

121. The case against Mr. Layman was dismissed in February 2023.

122. Mr. Layman spent more than a month incarcerated for a crime he did not commit.

123. He then spent years being subjected to pretrial bond conditions and the stigma associated with the underlying crime.

124. Mr. Layman suffered injuries every day of his wrongful prosecution.

125. Mr. Layman's arrest and wrongful prosecution caused him to lose his job, and his future job prospects, skills, and income he would have acquired during his wrongful detention and after his release.

126. During his wrongful incarceration, Mr. Layman was stripped of the various pleasures of basic human experience, from the simplest to the most important, which all free people enjoy as a matter of right. He missed out on the ability to raise his children, share holidays, and other life events with loved ones, and the fundamental freedom to live one's life as an autonomous human being.

127. Mr. Layman also suffered physical injuries during his incarceration. Those injuries included the lack of adequate medical care. Those struggles caused Mr. Layman to suffer on a daily basis.

128. As a result of his wrongful incarceration and prosecution, Mr. Layman must now attempt to rebuild his life.

129. Mr. Layman has suffered tremendous damage, including physical sickness and injury and emotional damages, all proximately caused by Defendants' misconduct.

**Count I - 42 U.S.C. § 1983**
**Due Process**
**All Defendants**

130. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

131. As described more fully above, Defendants, while acting individually, jointly, and in conspiracy, as well as under color of law and within the scope of their employment, deprived Mr. Layman of his constitutional right to a fair trial.

132. In the manner described more fully above, the Defendants conducted a reckless investigation, withheld exculpatory evidence, withheld impeachment evidence, destroyed evidence, and fabricated false reports, false testimony, and other evidence. Absent this misconduct, the prosecution of Mr. Layman could not and would not have been pursued.

133. Defendants misconduct also directly resulted in the unjust criminal conviction of Mr. Layman, thereby denying each of his constitutional right to a fair trial in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

134. As a result of this violation of his constitutional right to a fair trial, Mr. Layman suffered injuries including but not limited to emotional distress and pain and suffering, as is more fully alleged above.

135. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally and with willful indifference to Mr. Layman's constitutional rights.

136. The misconduct described in this Count was undertaken pursuant to a routine practice of the Elkhart Police Department to pursue wrongful convictions through reckless and profoundly flawed investigations, provision of false evidence and reports, coerced evidence, and failure to properly supervise employees knowing that those employees were providing false evidence. In this way, the municipal defendants violated Mr. Layman's rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

137. These widespread practices, so well-settled as to constitute *de facto* policy in the Elkhart Police Department, were able to exist and thrive because municipal policymakers with authority over the Division of Police exhibited deliberate indifference to these problems, thereby effectively ratifying them.

138. The widespread practices described in the preceding paragraphs were allowed to flourish because the municipal Defendants declined to implement sufficient training and/or enforce legitimate oversight and punishment.

**Count II – 42 U.S.C. § 1983**
**Deprivation of Liberty Without Probable Cause**
**Fourth and Fourteenth Amendments**
**All Defendants**

139. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

140. As described more fully above, the Defendants, individually, jointly and in conspiracy with each other, as well as under color of law and within the scope of their employment, deprived Mr. Layman of his constitutional right to be free from unlawful prosecution and continued detention without probable cause.

141. In the manner described more fully above, the Defendants made, influenced and/or participated in the decision to prosecute Mr. Layman for these crimes, for which prosecution there was no probable cause and which caused Mr. Layman to suffer a deprivation of liberty. Their misconduct included falsifying evidence and withholding exculpatory evidence.

142. The Defendants' misconduct directly resulted in the unlawful prosecution and incarceration of Mr. Layman, thereby denying each of his constitutional right to liberty in violation of his constitutional rights.

143. As described more fully above, the prosecution was ultimately resolved in Mr. Layman's favor.

144. Because of this violation of his constitutional rights, Mr. Layman suffered injuries, including but not limited to bodily harm and emotional distress, as is more fully alleged above.

145. The Defendants' misconduct, as described in this Count, was objectively unreasonable and was undertaken intentionally with malice and willful indifference to Mr. Layman's constitutional rights.

146. The misconduct described in this Count was undertaken pursuant to a routine practice of the Elkhart Police Department to pursue wrongful prosecutions and wrongful convictions through reckless and profoundly flawed investigations and coerced evidence. In this

way, the municipal defendants violated Mr. Layman's rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

147. These widespread practices, so well-settled so as to constitute *de facto* policy in the Elkhart Police Department, could exist and thrive because municipal policymakers with authority over the Division of Police exhibited deliberate indifference to the problem, thereby effectively ratifying it.

148. The widespread practices described in the preceding paragraphs could flourish because the municipal defendants declined to implement sufficient training and/or enforce legitimate oversight and punishment.

**Count III - 42 U.S.C. § 1983**
**Failure to Intervene: All Defendants**

149. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

150. In the manner described above, during the constitutional violations described above, one or more of the Defendants stood by without intervening to prevent the misconduct, despite having a reasonable opportunity to do so.

151. Because of the Defendants' failure to intervene to prevent the violation of Mr. Layman's constitutional rights, Mr. Layman suffered pain and injury, as well as emotional distress.

152. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally and with willful indifference to Mr. Layman's rights.

153. The misconduct described in this Count was undertaken pursuant to the policy and practice of the Elkhart Police Department in the manner described more fully in the

preceding paragraphs and was tacitly ratified by policymakers for the Municipal Defendants with final policymaking authority.

**Count IV - 42 U.S.C. § 1983**
**Conspiracy to Deprive Constitutional Rights: All Defendants**

154. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

155. After Mr. Torres' death, the Defendants reached an agreement amongst themselves to frame Mr. Layman for the crime and to thereby deprive him of his constitutional rights and liberty to be continuously taken away from him, all as described in the various Paragraphs of this Complaint.

156. In this manner, the Defendants, acting in concert with other unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

157. In furtherance of the conspiracy, each of the co-conspirators committed overt acts as described in this Complaint and was an otherwise willful participant in joint activity.

158. As a direct and proximate result of the illicit prior agreement referenced above, Mr. Layman's rights were violated, and he suffered financial damages, as well as severe emotional distress and anguish, as is more fully alleged above.

159. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

160. The misconduct described in this Count was undertaken pursuant to the policy and practice of the Elkhart Police Department in the manner described more fully in the preceding paragraphs, and was tacitly ratified by policymakers for the municipal defendants with final policymaking authority.

**Count V – 42 U.S.C. 1983**
**Equal Protection: All Defendants**

161. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

162. As described more fully above, the Defendants denied Plaintiff equal protection of the law.

163. Specifically, these Defendants actively participated in or personally caused misconduct in terms of conducting investigations in a manner calculated to deprive minority suspects of their due process rights by withholding material exculpatory evidence and fabricating false evidence of those suspects' guilt. Said misconduct was motivated by racial animus and constituted purposeful discrimination; it also affected minorities in a grossly disproportionate manner vis-a-vis similarly-situated Caucasian individuals.

164. As a result of this violation, Plaintiff, a Black male, suffered injuries, including but not limited to emotional distress.

165. The misconduct by the Defendants described in this Count was undertaken pursuant to the policy and practice of the Elkhart Police Department in the manner described more fully above.

**Count VI - 42 U.S.C. § 1983**
***Monell* Claim Against Defendant City of Elkhart**

166. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

167. The actions of the Elkhart Police Officers in withholding material exculpatory information from Mr. Layman and his counsel were undertaken pursuant to the policies and

practices of the Elkhart City Police, described above, which were created, maintained, or ratified by policymakers for the City of Elkhart with final policymaking authority.

168. The policies and practices described in this Count were maintained and implemented by the City of Elkhart with deliberate indifference to Mr. Layman's constitutional rights.

169. As a direct and proximate result of the City of Elkhart's actions, Mr. Layman's constitutional rights were violated and he suffered injuries and damages, as set forth in this Complaint.

170. The City of Elkhart is therefore liable for the misconduct committed by its officers.

**Count VII – Failure to Supervise**
**Defendant Young**

171. Each paragraph of this Complaint is incorporated as if restated fully herein.

172. The continued wrongful detention of Mr. Layman was caused by the deliberate indifference and recklessness of supervisory defendants, including but not limited to Defendant Young when he failed to adequately train and supervise the individual Defendants.

173. Specifically, the supervisory defendant was personally involved in the case and knew or, in the absence of their deliberate indifference and recklessness, should have known of his subordinates' unconstitutional actions and related misconduct in the case.

174. Furthermore, the supervisory Defendant failed to supervise the Defendant Officers in constitutionally adequate law enforcement practices, thereby encouraging and/or permitting these employees and other Defendants to engage in a reckless investigation, to

coerce and fabricate false inculpatory evidence and to withhold exculpatory and impeachment evidence, which caused the constitutional deprivations suffered by Mr. Layman.

175. These investigative procedures were contrary to accepted methods used by law enforcement agencies. The fact that the Defendant supervisor failed to train and supervise his subordinates to ensure that they employed proper investigation procedures demonstrates deliberate indifference and reckless disregard for Mr. Layman's constitutional rights.

176. The personal involvement of the Defendant supervisor, through their actions and omissions, proximately and directly caused the constitutional deprivations and grievous personal injuries suffered by Mr. Layman, including the above-mentioned injuries and damages.

177. The misconduct described in this Count was objectively unreasonable, and was undertaken intentionally, with malice, willfulness, and deliberate indifference to Mr. Layman's clearly established constitutional rights.

**Count VIII - State Law Claim**
**City of Elkhart's Breach Of Duty in Hiring, Training and Supervising – Negligence**

178. Each of the foregoing Paragraphs is incorporated as if restated fully herein.

179. The Defendant City of Elkhart and its police department at all times relevant had a duty to exercise due care in hiring police officers, and had a duty to properly train, supervise, and discipline Elkhart Police Department Officers in relation to their duties, including their actions in criminal investigations.

180. The City of Elkhart and its police department breached those duties by failing to exercise due care in hiring and then failing to properly train, supervise, and discipline the officers

involved in the misconduct in criminal investigations.

181. As a direct and proximate result of the City of Elkhart's failing to exercise due care in hiring and failing to train and supervise, Defendants were able to secure Mr. Layman's wrongful conviction.

**Count IX - State Law Claim**
**City of Elkhart's Breach of Duty in Hiring – Willful and Wanton Conduct**

182. Each of the foregoing Paragraphs is incorporated as if restated fully herein.

183. The City of Elkhart and its police department at all times relevant had a duty to refrain from willful and wanton conduct in hiring police officers.

184. The City of Elkhart and its police department breached that duty by engaging in willful and wanton conduct in hiring Defendant Sigsbee.

**Count X**
**Respondeat Superior**

185. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

186. In committing the acts alleged in the preceding paragraphs, the Police Defendants were members and agents of the Elkhart Police Department, acting at all relevant times within the scope of their employment. Defendant City of Elkhart is liable as principals for all state law torts committed by their agents.

187. In committing the acts alleged in the preceding paragraphs, Defendants Schwartz and Young were members and agents of the Elkhart Police Department, acting at all relevant times within the scope of his employment. Defendant City of Elkhart is liable as principals for all state law torts committed by their agents.

**COUNT XI**
**Intentional Infliction of Emotional Distress: All Defendants**

188. Mr. Layman hereby incorporate by reference the foregoing paragraphs and further allege as follows.

189. Defendants intentionally and/or recklessly, directly and proximately caused Mr. Layman, an innocent man, to be falsely arrested, maliciously prosecuted, and wrongly imprisoned, in breach of the duties they owed to Mr. Layman to refrain from a) destroying evidence, b) fabricating evidence, c) withholding material, exculpatory and impeachment evidence, d) failing to conduct a constitutionally adequate investigation, e) maliciously prosecuting, causing Mr. Layman's false arrest and imprisonment.

190. The Defendants' actions caused Mr. Layman to suffer physical harm, including physical ailments and unauthorized physical contact resulting from the circumstances and duration of his wrongful incarceration, and to fear for his physical safety throughout the period of his pretrial and post-conviction incarceration.

191. The Defendants' actions caused Mr. Layman to experience severe emotional distress, including, but not limited to humiliation, embarrassment, degradation, loss of trust, permanent loss of natural psychological development, and ongoing depression.

**WHEREFORE**, Plaintiff HAHKEEM J LAYMAN, respectfully requests that this Court enter judgment in his favor and against, MATTHEW SCHWARTZ AND DUSTIN YOUNG in their individual capacities, and the Defendant CITY OF ELKHART awarding compensatory damages, attorneys' fees, and costs against each Defendant, and punitive damages against each of the individual Defendants, as well as any other relief this Court deems appropriate.

**JURY DEMAND**

Plaintiff, HAHKEEM J. LAYMAN, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

/s/ Elliot Slosar
*One of Plaintiff's Attorneys*

Jon Loevy
Elliot Slosar
Margaret E. Campbell
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607
(312) 243-5900
Fax: (312) 243-5902